UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:25-cr-26-CEM-LHP

MONTREY ROSEBERRY

### UNITED STATES' SENTENCING MEMORANDUM

Montrey Roseberry terrorized dozens of children across the United States. Weaponizing the anonymity of the internet, he extorted scores of young boys into manufacturing child pornography that involved sadomasochism, bestiality, and the sexual abuse of other children. If the victims did not comply with his demands, Roseberry threatened to send these images and videos to victims' family members, friends, and classmates. In some cases, Roseberry threatened the child victims with death. To demonstrate his intention and ability to carry out these threats, Roseberry sent the child victims photographs of their homes and names of their schools, friends, and family members. All told, Roseberry victimized over fifty children.

Roseberry's victims will carry this burden for the rest of their lives. They will go through life with the scars of their abuse and the knowledge that images of their abuse circulate among pedophiles within the mass distribution system for child pornography. This continued exploitation is never-ending. Accordingly, the United States seeks a guidelines sentence of life imprisonment.

## I.   Background

### a.  Offense Conduct

Roseberry repeatedly extorted and threatened children into producing child pornography via the internet.  Roseberry impersonated a female and befriended young boys he identified on the internet and social media applications, such as Snapchat and Omegle. Using this false identity, Roseberry first lured child victims into producing images and videos of themselves engaged in sexually explicit conduct. Then, Roseberry used this material to extort the victims into producing twisted and depraved content involving, sadomasochism, coprophilia, bestiality, and the sexual abuse of other children.

If the child victims did not comply, Roseberry threatened to disseminate these sexually explicit images and videos to the child victims' family members, friends, and classmates. In some cases, Roseberry threatened the child victims with death. Additionally, to force the victims into complying with his demands, Roseberry sent some of the child victims photographs of their homes and names of their schools, friends, and family members.  As a result of this scheme, Roseberry obtained CSAM of over 50 victims. At the time of his arrest, Roseberry possessed at least 6,040 images of CSAM on his cell phone

### b.  Procedural History

On January 29, 2025, a grand jury returned an indictment charging Roseberry with two counts of coercion and enticement of a minor, in violation of 18 U.S.C. §

2422(b), four counts production of child pornography in violation of 18 U.S.C. § 2251(a), and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). Doc. 1. The Court ordered Roseberry detained pending trial. Doc. 32.

On February 19, 2026, a jury found Roseberry guilty on all counts. Doc. 83. Roseberry's sentencing is scheduled for May 28, 2026.

## II.    Presentence Investigation Report

On May 19, 2026, probation issued its Final Presentence Investigation Report ("PSR") as to Roseberry. Doc. 95. Roseberry's guidelines for the underlying offenses are lifetime imprisonment. PSR at ¶ 120. Roseberry is subject to a 10-year mandatory minimum up to life imprisonment as to Counts One and Five, a 15-year mandatory minimum up to 30 years imprisonment as to Counts Two, Three, Four, and Six and a maximum term of imprisonment of up to 20 years' imprisonment as to Count Seven. *Id.* ¶119.

## III.    Argument

Roseberry's conduct, taken with the sentencing factors set forth in 18 U.S.C. § 3553(a), demands a guidelines sentence of life imprisonment. His sexual abuse of numerous children and pattern of eager and persistent consumption of child pornography reflect the worst of human nature.

A sentence of life impressment is necessary due to the nature and circumstances of the offense, to promote respect for the law, provide just punishment for the offense, afford adequate deterrence of these crimes, and for the protection of the public against

the defendant. *See* 18 U.S.C. § 3553(a).

The United States recognizes that a sentencing court may not presume that a sentence within the advisory guideline range is reasonable; however, the Guidelines remain a significant and pivotal component of the sentencing process. The Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009). Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. Additional factors outlined in § 3553(a)(2) include the need for the sentence to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed education or vocational training, medical care, or other corrective treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). A consideration of these factors warrants a sentence of life in prison.

### A. Nature and Circumstances of the Offense

The nature and circumstances of Roseberry's offenses are horrific. He did not suffer from a momentary lapse in judgment. His conduct was calculated and

4

premeditated. On multiple occasions, he deliberately and consistently elected to abuse children for his sexual gratification.

At trial three children testified. All told similar accounts of what happened to them. All of them thought they were talking to a young female named "Kaya Graham." All of them initially willingly sent sexually explicit material. In each case, "Kaya Graham" requested then demanded perverse sexually explicit material. Some of the child victims told their parents. Others thought they had no way out.

Minor Victim-1 did not think that he had a way out. Minor Victim-1 was threatened and extorted into sexually abusing another child, who was just four years old. When Roseberry discovered that Minor Victim-1 had a dog he demanded videos depicting Minor Victim-1 engaging in bestiality with his pet, he instructed Minor Victim-1 to put peanut butter on his genitals and video his pet licking it off. When Minor Victim-1 pushed back on Roseberry's demands, Roseberry threatened to come to Minor Victim-1's home and kill him and his family. Roseberry went so far as to send pictures of Minor Victim-1's location and home. Under the threat of death, Minor Victim-1 complied with Roseberry's demands. Minor Victim-1 will live with this for the rest of his life.

Much like Minor Victim-1 when Roseberry discovered that Minor Victim-4 had a pet dog, he demanded a video of Minor Victim-4's pet licking peanut butter off his genitals. Like Minor Victim-1, Minor Victim-4 complied with this request. When Roseberry learned that Minor Victim-4 had a sibling he tried to extort him into

sexually abusing his sibling, fortunately Minor Victim-4 instead informed his parents about Roseberry's demands.

When Minor Victim-3 decided he no longer wanted to comply with Roseberry's sextortion and blocked the Kaya Graham account, Roseberry began messaging him from other accounts and phone numbers and threatened to send his nude videos to Minor Victim-3's friends and family. It was then that Minor Victim-3 informed his mother about what had been going on and the sextortion was stopped.

At trial, Roseberry testified in his defense. On direct examination, when asked to explain the images and videos found on his phone, Roseberry testified that he was not the one to do any of this and that it would have to have been transferred to his phone by some unknown person. Trial Tr. 8: 2-10, February 19, 2026. Roseberry admitted on cross examination that he always had his device with him, that he was the only person who utilized the device, that it was password protected, and his face was what unlocked the device. Trial Tr. 23 2-5, 15-18, 26: 25, 27:1-21, February 19, 2026. He admitted that Government's Exhibits 3A, 4A, 4B, 4C, 4D, 5A, 6A, 6B, 6C, 6D, 12C, and 12G were all located on his device. Trial Tr. 25:23-25, 26: 1-24, February 19, 2026.

The Eleventh Circuit has consistently upheld life and natural-life sentences for conduct reaching similar levels of depravity. For example, in *United States v. Sarras*, the Eleventh Circuit affirmed as substantively reasonable a 100-year sentence where the defendant had several sexual encounters with a single 13-year-old girl for roughly

one year and took explicit photographs of her. *See* 575 F.3d 1191, 1220 (11th Cir. 2009). In *United States v. Johnson*, the Eleventh Circuit upheld as reasonable a 140-year sentence where the defendant, with a criminal history category of I, abused and photographed three boys—Victim 1, from 8–15 years old, Victim 2, from 14–16 years old, and Victim 3, from 13–14 years old. *See* 451 F.3d 1239, 1244 (11th Cir. 2006); *see also United States v. Kapordelis*, 569 F.3d 1291, 1318–19 (11th Cir. 2009) (upholding as reasonable a 420-month sentence, which represented an upward variance, where defendant engaged in a pattern over many years of molesting young teenaged boys and taking photographs of them); *United States v. Rothenberg*, 610 F.3d 621, 625–27 (11th Cir. 2010) (rejecting a challenge to 300-month sentence for a 64-year-old defendant who engaged for sex an undercover agent posing as the father of an eleven-year-old daughter); *United States v Manley*, 231 F. App'x 870, 871 (11th Cir. 2007) (rejecting reasonableness challenge to 360-month sentence for a 64-year-old defendant who took to the internet to engage an undercover agent offering up her putative 12-year-old son and daughter for sex).

In most cases, the Eleventh Circuit has "treated sex offenses as serious crimes, upholding severe sentences…" *United States v. Pugh*, 515 F.3d 1179, 1202 (11th Cir. 2008). The Eleventh Circuit is not alone in that regard. Nor is this Circuit alone in upholding life and natural life sentences for conduct comparable to Roseberry's crimes. For example, in *United States v. Horton*, the Seventh Circuit rejected reasonableness challenge to and affirmed a 90-year sentence for a karate instructor

who, over a nine-month period, created 37 videos of himself engaged in sexual conduct with three of his minor students. 770 F.3d 582, 583 (7th Cir. 2014). And, in *United States v. Raplinger*, the Eighth Circuit upheld as reasonable a 457-month sentence where the 34-year-old defendant enticed a 15-year-old victim into a long-term sexual and romantic relationship, produced child pornographic photos of her, and introduced her to other adults who had sexual contact with her. 555 F.3d 687, 689–695 (8th Cir. 2009). Additional extra-circuit illustrations abound. *See, e.g.*, *United States v. Huffstatler*, 571 F.3d 620, 621 (7th Cir. 2009) (upholding a 450-month sentence for a defendant who hired a 14-year-old boy to help with household chores, removed his pants, manipulated his penis until it was erect and took 16 photographs of him); *United States v. Betcher*, 534 F.3d 820, 827-28 (8th Cir. 2008) (upholding as reasonable a 750-year sentence for a first-time offender, offense-level 52, who had taken pornographic pictures of five 8 to 11-year-old girls, including two of his granddaughters); *United States v. Vowell*, 516 F.3d 503, 511-13 (6th Cir.2008) (upholding as reasonable a 780-month sentence for a 40-year-old man who had sexual intercourse with his girlfriend's 8-year-old daughter while being videotaped by his girlfriend).

Although this Court must consider other factors beyond Roseberry's offense conduct, this Court should nonetheless give significant weight to his offense conduct in crafting his sentence here. *See, e.g.*, *United States v. Croteau*, 819 F.3d 1293, 1309 (11th Cir. 2016) ("The weight given to any specific § 3553(a) factor is committed to

8

the sound discretion of the district court."). Roseberry's actions to obtain and produce child pornography of other victims to satisfy his own sexual cravings was prolific. The abuse of all of the child victims in this case will live on not just in their memories but in recordings. *See New York v. Ferber*, 458 U.S. 747, 758 (1982) ("Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.").

The evidence in this case shows that Roseberry is a dangerous predator. He hid his identity to gain the trust of young boys, and once he gained that trust he then exploited them for his own sexual gratification. This was a scheme he used on young boys across the country. He did not just threaten to release embarrassing sexually graphic videos of the child victims, he threatened to kill them. This dangerous behavior requires a significant sentence in prison.

### B. History and Characteristics of the Defendant

Roseberry's history and characteristics weigh in favor of a life sentence. Roseberry is 20 years old, has no criminal convictions, and had a normal upbringing. While these are characteristics that may ultimately weigh in favor of Roseberry, it is clear there is no specific reason why Roseberry committed the instant offenses.

9

The gravity of Roseberry's crimes against children cannot be minimized by his age. Roseberry's acted as if there were no consequences to exploiting these children. This callousness requires serious intervention to protect the community. A sentence of life imprisonment is necessary to recognize the victims harmed by Roseberry's conduct, to restore public confidence, and respect for our laws, and to address Roseberry's dangerousness.

A term of life in prison is the only deterrence option left that will convey that such behavior is unacceptable and will be adjudicated harshly within the Eleventh Circuit. Accordingly, there is a strong need to impose a severe sentence that will serve as a warning to Roseberry and individuals considering similar conduct.

### C. Need to Protect the Public from Further Crimes of the Defendant

Deterrence is important for crimes involving the sexual abuse of children, including child pornography. *See United States v. Goldberg*, 491 F.3d 668 (7th Cir. 2007). "Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor." *See id*.

The Supreme Court has noted "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class..." *Smith v. Doe*, 538 U.S. 84, 103 (2003). Roseberry fits well within that class. As this Circuit recognized in *United States v. Irey*, 612 F.3d 1160 (11th Cir. 2010), research in this field is "consistent with what judicial decisions show: pedophiles who have sexually abused children are a threat to continue doing so, and age does not remove the

threat." 612 F.3d at 1214 (citing various studies and reports); *see also Pugh*, 515 F.3d
at 1201 ("sex offenders have appalling rates of recidivism and their crimes are under-
reported."); *United States v. Allison*, 447 F.3d 402, 405–06 (5th Cir. 2006) ("Congress
explicitly recognized the high rate of recidivism in convicted sex offenders, especially
child sex offenders."). Roseberry's pattern of sexual exploitation of children
evidences a high probability of recidivism if this Court allows him the chance to
reenter society. A strong need thus exists to protect children in the community from
Roseberry—now and well into the future.

There is a strong need to protect the public from further crimes by the defendant.
Roseberry demonstrated dangerous behavior repeatedly with young boys across the
country. This predatory conduct poses a grave danger to society. The means that
Roseberry used to manipulate the victims is despicable. Children have gradually
become easier to access via the internet, and Roseberry's case is an example of what
happens when bad actors are willing to take advantage of those children.

### D. Seriousness of the Crime, Promoting Respect for the Law, and the Need for Just Punishment

"Retribution is a valid penological goal." *Glossip v. Gross*, 135 S. Ct. 2726, 2769
(2015) (Scalia, J. concurring). As the Eleventh Circuit explained in *Irey*: "the greater
the harm the more serious the crime, and the longer the sentence should be for the
punishment to fit the crime." 612 F.3d at 1206. Punishment is the way in which
society expresses denunciation of wrongdoing, and it is thus essential that this Court

promote and maintain respect for the law by pronouncing sentences that fully reflect society's revulsion. *See Gregg v. Georgia*, 428 U.S. 153, 184 n. 30 (1976) (citing Royal Commission on Capital Punishment, Minutes of Evidence, Dec. 1, 1949, p. 207 (1950)). "Child sex crimes are among the most egregious and despicable of societal and criminal offenses…" *Sarras*, 575 F.3d at 1220 (discussing how courts have upheld lengthy sentences in cases involving child sex crimes as substantively reasonable). Here, the seriousness of the crimes, taken with the need for just punishment and the goal of promoting respect for the law, weigh heavily in favor of a life sentence.

    1.  <u>Promoting respect for the law</u>

This Court's sentence must reflect the need to "promote respect for the law." 18 U.S.C. § 3353(a)(2)(A). When Congress passed the Protection of Children against Sexual Exploitation Act of 1977, it sought to address the organized, nationwide child pornography industry that was generating millions of dollars through the exploitation of children. S. REP. 95-438, 5, 1978 U.S.C.C.A.N. 40, 42-43. The Act, which included 18 U.S.C. § 2251, was aimed at filling a void in federal law by targeting the production of materials depicting child abuse. S. REP. 95-438, 5, 1978 U.S.C.C.A.N. at 56. Analogously, when Congress passed the Telecommunications Act of 1996, it amended 18 U.S.C. § 2422 to prohibit individuals from using the newly-available internet to entice minors into prostitution or other sex-based crimes. PL 104–104, February 8, 1996, 110 Stat 56.

But those Acts, and their later amendments, are more than prophylactic measures. They reflect value judgments and moral norms of our society. Child sex abuse "is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional and sexual development in ways which no just or humane society can tolerate." *See Kennedy v. Louisiana*, 554 U.S. 407, 468 ((Alito J., joined by Roberts, C.J., Scalia, and Thomas, JJ., dissenting) (citation omitted).

Roseberry's conduct has wreaked immeasurable damage on the minor victims in this case. His conduct shows that he has no respect for the law or man. Indeed, his conduct and sense of entitlement suggest that he believes he is above the law. This Court's sentence must express an appropriate level of social condemnation of his crimes.

2.  Impact on the victims

It is axiomatic that hands-on sexual abuse inflicts upon its victim enormous, devastating, and long-lasting harm. That the abuse is inflicted on a child adds a devastating dimension to the harm ordinarily inflicted on victims of sexual abuse. As the Supreme Court explained in *Kennedy v. Louisiana*:

> […] the victim's fright, the sense of betrayal, and the nature of her injuries caused more prolonged physical and mental suffering than, say, a sudden killing by an unseen assassin. The attack was not just on her but on her childhood.... Rape has a permanent psychological, emotional, and sometimes physical impact on the child. We cannot dismiss the years of long anguish that must be endured by the victim of child rape.

554 U.S. at 435 (citing various studies). Those years of anguish can include sudden school failure, unprovoked crying, dissociation, depression, insomnia, sleep disturbances, nightmares, feelings of guilt and inferiority, and self-destructive behavior, including an increased incidence of suicide. *Id.* at 468 (Alito J., joined by Roberts, C.J., Scalia, and Thomas, JJ., dissenting). For victims of child pornography, this anguish is exacerbated by the perpetual circulation of the images depicting their abuse. The minor victims in this case have been exploited not only by Roseberry, but by the depraved, monstrous industry that consumes and destroys innocence.

Roseberry destroyed any possibility of the minor victim's lives ever being normal. His crimes having lasting impacts on the minor victims as they live in a world where child pornography of them exists in perpetuity on the internet.  A guideline sentence life imprisonment is necessary to recognize all of the victims harmed by Roseberry's conduct.

### E. Conclusion

Roseberry is a predator. His sentence should fairly account for his predatory and abusive nature, the scope of his criminal endeavors, acknowledge the harm that he has caused to the victims, and acknowledge the ramifications of his actions. Roseberry's freedom and autonomy are incompatible with the safety of children in our community. Accordingly, the United States urges this Court to sentence Roseberry to life imprisonment.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:    /s/ Kaley Austin-Aronson
       Kaley Austin-Aronson
       Assistant United States Attorney
       Florida Bar No. 104705
       400 W. Washington Street, Suite 3100
       Orlando, Florida 32801
       Telephone:  (407) 648-7500
       Facsimile:   (407) 648-7643
       E-mail:      kaley.austin-aronson@usdoj.gov

**U.S. v. MONTREY ROSEBERRY    Case No. 6:25-cr-26-CEM-LHP**

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

> Thomas H. Dale, Esq.
> *Attorney for the Defendant*

> /s/ *Kaley Austin-Aronson*
> Kaley Austin-Aronson
> Assistant United States Attorney
> Florida Bar No. 104705
> 400 W. Washington Street, Suite 3100
> Orlando, Florida 32801
> Telephone:  (407) 648-7500
> Facsimile:  (407) 648-7643
> E-mail:      kaley.austin-aronson@usdoj.gov